FARRELL CARRIGAN *vs.* JOSEPH HULL.

That it is not error for the Court to instruct the jury, that they may infer fraud in the contract of Defendant and Son, who was a Bankrupt, to pay Plaintiff for his labor, done for Defendant when Plaintiff was a stranger, and the Defendant and his son knew of this Bankruptcy, and did not make it known to the Plaintiff.

This action came up from the County Court for a hearing on the following Bill of exceptions, to wit :

This was an action of Assumpsit for work and labor, as (per writ and declaration, made a part of the case,) will more fully appear. Plea, gen. issue and joinder to the country. The plaintiff introduced testimony, tending to show, that during the summer or fall of 1831, he labored for the defendent on his farm in Danville, about three months, and here rested his case.

The defendant, thereupon, stated to the Court and Jury, that he relied for a defence upon the following facts, viz :— that some time previous to the Plaintiff's commencing said labor, one Sewall Hull contracted with the plaintiff to pay him therefor. Thereupon the defendant introduced the several depositions of Sewall Hull and Lucy Hull, which are made a part of this case. The defendant also introduced other testimony, tending to prove, that the plaintiff, during his time of service, and afterwards, admitted he was employed by Sewall Hull and not by Joseph Hull, and here the defendant rested his defence. The plaintiff then introduced evidence, tending to shew, that, when said supposed contract between the plaintiff and said Sewall Hull was made, the said Sewall had then lately come from Peru to Plattsburgh in the State of New-York, ready to be committed to jail in said Plattsburgh for debt and was waiting there for that purpose, and was poor, and wholly destitute of property : all which was well known to the said Joseph Hull, defendant, who was father of said Sewall

CALEDONIA,
*March,*
1833.

Carrigan
*vs.*
Hull.

Hull, and was present when said supposed contract was made, at said Plattsburgh, and brought the plaintiff home to Danville with him, to labor on his, the defendant's farm. And there was further evidence tending to shew, *that the plaintiff was a young Irishman, who had just arrived in this country, and was seeking employment, and was a stranger to the defendant and his son Sewall; that, when the supposed contract was made, the plaintiff had no knowledge of the poverty and inability of the said Sewall to pay the plaintiff his wages.* Upon the aforesaid evidence the Court charged the jury, that, if they found the contract to have been made by *Sewall Hull*, to pay the plaintiff for his labor, and that said Sewall was then indebted to said *Joseph Hull*, yet, if they found from said evidence, that said Sewall was then a Bankrupt, and had lately moved to Plattsburgh to be committed to jail for debt, and was wholly unable to pay the plaintiff his wages, or any part of them, and this was well known to the defendant and said Sewall, at the time of making said supposed contract, but was unknown to the plaintiff, and neither the defendant, nor said Sewall, then nor subsequently, made known these facts to the plaintiff; but the defendant stood by, while the contract was making, and then brought the plaintiff home with him and set him to work on his the defendant's farm, where the plaintiff performed his three months labor; the jury having found these facts, have a right to infer therefrom, that the said supposed contract between the plaintiff and the said Sewall Hull was fraudulent and void. And, inasmuch as the defendant received the labor of the plaintiff under this contract, the law will imply a promise on his part to pay the plaintiff for his said work and labor, what the plaintiff deserved to have. The Jury returned a verdict for the plaintiff. The defendant excepts to the above charge of the Court. Exceptions allowed and execution ordered to be stayed.

*Argument for the Defendant.*—We except to the charge of the Court to the Jury.

This charge assumes the Law to be, that the fact of being present at the bargain between Plaintiff and Sewall Hull, and knowing circumstances affecting the ability of said Sewall, to fulfil his contract, and not communicating

CALEDONIA,
March,
1833.

Carrigan
vs.
Hull.

them to plaintiff, though making no misreprentations, and using no arts to divert plaintiff from making full enquiry into them, and without even knowing whether they were not already as well known to the plaintiff, the effect of which is to vacate both the formal contract, made between plaintiff and Sewall Hull, and that between Sewall and defendant, by virtue of which plaintiff's labor was to operate as payment from Sewall to Joseph, and subject defendant to a contract, which he did not make, to pay Plaintiff directly for his labor; and all this without a particle of proof, that plaintiff had first called on Sewall and had been refused payment.

We have ventured to suppose, that the Law is not thus. Although it may be doubtful, whether this form of action could be sustained, if defendant had been guilty of the grossest misrepresentations, by which plaintiff was deceived into the bargain, without the means of being undeceived by inquiry in the neighborhood, the authorities being contradictory on this point—Camp. 4, *Thompson* vs. *Bond;* 3d. Camp. 352, *Read* vs. *Hutchinson*; 3d. Torenton 274, *Hill* vs. *Perrot;* yet we are not disposed to dwell upon this ground. We rather choose to controvert the main position in the charge, with respect to what would constitute fraud in such case. It seems to be a clear principle, that, in ordinary sales of goods and chattels, when opportunity of inspection and examination is equally enjoyed by the parties, the fact of withholding a knowledge of some secret defect from the purchaser by the seller is not a legal fraud, so as to entitle the former to recover in any form of action.—Long on sales, 123; 3 Camp. R 154, *Boglehole* vs. *Walters* and Note as to the phrase 'all defects;' do: 506 *Lekneider et al.* vs. *Heath,* do: 351 *La Neuville* vs. *Nourse,* 4 Taunt. 779, *Pickering* vs. *Dawson;* 1 Pick. R 347 *Lewis, Adr.* vs. *Gouroge et al.* 2 East. 314, *Parkinson* vs. *Lee,* and note (1); 2 Dane. p. 542, § 11. p. 554, § 9.

The rule of course does not apply in those cases where the opportunity of learning the facts is confined to one party, as in case of insurance, where the insured are relied upon entirely for information, and are, therefore, bound to scrupulous accuracy in communicating it. So impor-

tant is the means of knowledge within the reach of the purchaser, that he cannot recover, even on an express warranty, for visible defects. 3 *Bl. Com.* 165. *Bul. N. P.* 31; 2 *Dane p.* 543.

We contend, that the present is a stronger case than the ordinary one of sales of personal property; inasmuch as it was not a contract between plaintiff and defendant at all; and the latter in no way became connected with the transaction, except by receiving plaintiff's labor. Nothing short of unequivocal proof of participation in a fraudulent purpose of procuring plaintiff's labor without reward, ought to charge him. Even upon the supposition, that Sewall Hull intended a fraud, it by no means follows, that defendant was privy to it, and should answer for it. Then, as to the poverty of Sewall, was it not a fact equally accessible to plaintiff as defendant, especially as plaintiff entered into this contract at Plattsburgh, where Sewall resided, and defendant resided at Danville. He had only to make inquiries in the neighborhood, to have learned the facts; and in analogy to the case of sales, if there had been, what there was not in this case, a false affirmation knowingly made by defendant, the plaintiff would not be excusable in neglecting to make the proper inquiries.

The circumstances, that plaintiff was a foreigner recently arrived in the country, and had been only a few days in Plattsburgh, if true, though the only evidence of them is his own declarations, as stated in Lucy Hull's deposition, could make no difference. A few days or even a few hours would be amply sufficient; and especially after he had appealed to defendant to know whether he would in any event be responsible, and been told, that he would not, he seems wholly inexcusable. If he should fail to collect his wages of Sewall Hull, which it does not appear he ever attempted to do, his loss ought to be attributed to his own negligence. There is still a further reason, why defendant's simple neglect to disclose facts within his knowledge ought not to be taken as conclusive evidence of fraud, or indeed any evidence of fraud; which is, that, even if we suppose plaintiff to have been ignorant of Sewall's bankruptcy, there is nothing in the case, which goes to shew defendant's knowledge of this ignorance. It was natural for him to suppose, and he probably did suppose,

4

CALEDONIA,
*March,*
1833.

Carrigan
*vs.*
Hull.

that plaintiff was at least as well acquainted with it, as he himself was; and, if so, there was no occasion for him to to speak of circumstances presumed to be fully known to all concerned. The defendant has been cut off from his defence by a supposed technical fraud, when he is conscious that none was intended by him; and he only desires an opportunity to explain the whole circumstances, which he believes he can do to the satisfaction of any jury.

*Argument for the plaintiff.*—Fraud vitiates all contracts.

There is but one class of cases, in which a distinction has ever been made between a deceit practiced by means of a suppression of truth, and a fraudulent misrepresentation—and even in that class of cases the distinction is now obsolete. I refer to cases of sales *with all faults.*

It was formerly held, that in such cases, the vendor was not liable for any defect in the article sold, unless he used some artifice to conceal it, or made some misrepresentation with a design to deceive. Hence the decision of the Court in the cases of *Bagleholevs. Walters,* 3 Camp. Rep. 154, and *Pickering* vs. *Dawson,* 4 Taunton, 779.

But the general rule of law upon this subject is, that, if there be an intentional concealment, or suppression of material facts in the making of a contract, in cases in which both parties have not equal access to the means of information, it will be deemed unfair dealing, and will vitiate and avoid the contract. 2 Kent. Com. 377; 8 Mass. 409, Peake's cases, 115; 1 Starkie's Rep. 434; 3 Barn. & Cress. 605; Brod. & Bing. 289.

There is no distinction, in point of justice, equity, morality, or law, between a fraudulent concealment and a wilful misrepresentation.

The transaction must be fair and honest.

The jury under the charge of the Court found fraud and no power of words can so bend this case, as to make it appear otherwise than a foul attempt on the part of the defendant to swindle the plaintiff out of his summer's wages, to get the benefit of his sweat and toil, and then compel him to whistle to the winds for pay.

HUTCHINSON, C. J.—The instructions given to the jury in this case, do not treat the case as involving fraud *per se;* but as a case of evidence, tending to prove facts, from which

CALEDONIA
*March*,
1833.

Carrigan
*vs.*
Hull. ·

the jury might infer the further fact of a fraudulent intention in the defendant and his son Sewall, to procure the plaintiff to labor for the defendant, with no prospect of ever getting any pay for his labor. The question now presented, is, whether the testimony, if believed, proved facts, from which this fraud might legally be inferred.

It seems, that the plaintiff had but lately arrived at Plattsburgh from Ireland, when this contract was made; and that the said Sewall Hull had then lately come there from Peru, with expectation of being committed to prison for debt. The testimony is, that Sewall was then a Bankrupt, and this well known to him and to the defendant.— There is no intimation that the plaintiff knew it. It is said the plaintiff had the means of knowledge. What these means were, or could have been, does not appear.— It is very improbable that the circumstances of Sewall were much known at Plattsburgh, at that time. It does not appear, that they were known at all. Hence any inquiry by the plaintiff, in the neighborhood, might have been of no use. It is pretty certain, that the plaintiff would not thus have gone to Danville and performed this labor, if he had not believed, he should receive his pay.— All these considerations presented themselves as fully to the defendant then, as they have since been presented to the Court and jury. If the defendant stood by, as was testified, and refused to become holden himself to pay for the plaintiff's labor, and heard Sewall, the bankrupt, make this contract with the plaintiff for his the defendant's benefit, and took the plaintiff home with him and received his labor, the defendant all this time knowing of Sewall's total inability to pay the plaintiff, and yet did not undeceive the plaintiff by informing him of Sewall's bankruptcy, from all this the jury might well infer the fraudulent intent of Sewall and the defendant to obtain this labor of the plaintiff, and he be left with no prospect of any compensation for it.

The verdict was in favor of the plaintiff, and the Judgment of the County Court is affirmed.

*Charles Davis*, for defendant.
*Geo. B. Chandler*, for plaintiff.